UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Dierdre Estes</u>

    v.                                        Civil No. 08-25-JL
                                                Opinion No. 2008 DNH 116
<u>Sunbridge Healthcare Corp.
d/b/a/ Langdon Place of Exeter</u>


**MEMORANDUM AND ORDER**

      The plaintiff, Dierdre Estes, sued her former employer in the New Hampshire Superior Court alleging wrongful termination under New Hampshire common law. The defendants removed the action to this court, <u>see</u> 28 U.S.C. § 1441, invoking its diversity jurisdiction. <u>Id.</u> § 1332(a). The plaintiff has responded with a motion: (1) to amend the complaint to join a non-diverse defendant, and (2) to remand the action to the state court based on the resulting lack of diversity jurisdiction. The parties declined a hearing on the motion. For the reasons that follow, the plaintiff's motions to amend and to remand are allowed.

**I.   BACKGROUND**[1]

Estes, a resident of New Hampshire, worked for Langdon Place of Exeter, an elderly living community with assisted living facilities, as the director of its Alzheimer's unit.  The defendant, Sunbridge Healthcare Corp., a New Mexico corporation, is the parent corporation of Langdon Place.[2]  Estes alleges that soon after she was hired, while reviewing resident paperwork in preparation for an upcoming audit by the state licensing board, she discovered "significant problems" in the medical records of residents on the assisted living floors.  Estes brought her concerns to the attention of her supervisor, Jean Davis, who, according to Estes, claimed that Langdon Place regularly "fixed" files by tearing out the problematic portions.  When Estes asked Davis why she would destroy medical records, Davis allegedly replied, in a threatening manner, "Because I can."

In a separate incident several days later, Estes alerted the New Hampshire Bureau of Elderly and Adult Services after observing an Alzheimer's patient confined in an unsecured room at Langdon Place for an extended time period.  Upon learning that

---

[1]  The background information is taken from the plaintiff's complaint and the parties' pleadings.

[2]  It is unclear whether Langdon Place has a separate legal identity, but in any event it has not been named as a defendant here.

Estes had reported this incident to a state agency, Davis allegedly berated her in front of other employees for raising a "flag" with the state that could jeopardize the unit with respect to the impending audit.

Estes alleges repeated subsequent instances of Davis--directly or through subordinate employees--destroying, altering, and falsifying residents' medical records in preparation for the state audit.  This alleged behavior includes coercing signatures from incapacitated residents, destroying copious amounts of paperwork, and fabricating medication distribution records.

Estes alleges that shortly after the completion of the state audit, she was again verbally attacked by Davis for her "disloyalty" and pressured to reveal the names of other employees who shared her concerns, which she refused to do.  Estes further alleges that Davis's treatment of her caused emotional and physical problems resulting in lost sleep and work absences. Estes raised concerns about Davis to fellow employees at Langdon Place, and to human resources officers at Sunbridge Healthcare. Nevertheless, on December 8, 2007, a little over three months after she began working for the defendant, Sunbridge Healthcare terminated Estes's employment.

Less than a week after her termination, Estes filed suit in Rockingham County Superior Court alleging wrongful termination

under New Hampshire common law. The defendant removed the case to this court on January 18, 2008, invoking its diversity jurisdiction. Just over a month later, the February 22, 2008, edition of the <u>Exeter News-Letter</u> quoted Davis as calling Estes a "disgruntled former employee with a private and personal agenda" whose conduct disrupting the "quality of life" of the Langdon Place residents was "shameful." Shortly after the publication of this article, Estes moved: (1) to amend the complaint to add a claim of intentional infliction of emotional distress against Jean Davis, a New Hampshire resident, and (2) to remand the case to state court on the ground that after the requested amendment there would no longer be complete diversity of citizenship.

## II. **APPLICABLE LEGAL STANDARD**

A single statute governs both issues before the court. As part of the Judicial Improvements and Access to Justice Act of 1998, Congress enacted 28 U.S.C. § 1447(e), which provides:

> If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to State court.[3]

---

[3] Section 1447(e) supersedes Federal Rule of Civil Procedure 15, which specifically allows a plaintiff to "amend its pleading once as a matter of course at any time before a response pleading is served." Fed. R. Civ. P. 15; <u>see also</u> <u>Mayes v.</u>

4

Section 1447(e) grants courts the discretion to determine whether or not to permit joinder of non-diverse defendants.  See Casas Office Machs. v. Mita Copystar Am., 42 F.3d 668, 674-75 (1st Cir. 1994); Kelley v. Vt. Mut. Ins. Co., 407 F. Supp. 2d 301, 305 (D. Mass. 2005) (observing that the permissive language of § 1447(e) "makes clear that Congress granted the courts broad discretionary power"); see also Hensgens v. Deere & Co., 833 F.2d 1179, 1182 (5th Cir. 1987).  The court's discretion is not restricted by the status of the party to be joined as "indispensable" or "necessary," see Casas, 42 F.3d at 673-75,[4] but is instead guided by a variety of "equitable factors that depend upon the circumstances."  Schrepfer v. Framatome Connectors USA, Inc., 115 F. Supp. 2d 182, 186 (D.N.H. 1999).

---

Rapoport, 198 F.3d 457, 462 n.11 (4th Cir. 1999); Doe v. Soc'y for Creative Anachronism, Inc., Nos. 1439-1440, 2007 WL 2155553, at *3 (E.D. Pa. July 25, 2007).  Therefore, the plaintiff "may not rely on Rule 15(a) to amend the pleading without leave of court and such an amendment must be analyzed pursuant to § 1447(e)."  Schindler v. Charles Schwab & Co., No. 05-0082, 2005 WL 1155862, at *2 (E.D. La. May 12, 2005).

   [4]  See also Irizarry v. Marine Powers Int'l, 153 F.R.D. 12, 14 (D.P.R. 1994) ("Virtually every court confronted with this issue has unanimously agreed that the statute compels a court to focus on whether joinder would be 'equitable' instead of being based on whether a party is indispensable."); Fed. R. Civ. P. 19 (required joinder of necessary parties); 14C Charles Alan Wright, et al., Federal Practice and Procedure § 3739, at 445 (3d ed. 1998) ("Section 1447(e) gives the court more flexibility than a strict Rule 19 analysis").

While the categorization of a party as indispensable "does not affect the Court's weighing of the equities," Maille v. United States Postal Serv., Inc., No. 08-cv-66-GZS, 2008 WL 2164566, at *1 (D. Me. May 21, 2008), it does affect the court's options on disposition of the motion. Where the party proposed to be added is indispensable, the court may deny joinder and dismiss the case, see Fed. R. Civ. P. 19, or allow joinder and remand the case to the state court. See Casas, 42 F.3d at 675. If the party is dispensable, however, the court may either deny joinder and retain jurisdiction over the case, or permit joinder and remand the case to state court. Id. The court cannot both allow joinder of a non-diverse party and retain jurisdiction. Id.

Where a plaintiff seeks to join a non-diverse party after removal on the basis of diversity jurisdiction, the court "should scrutinize that amendment more closely than an ordinary amendment" in order "to balance the defendant's interests in maintaining the federal forum with the competing interests of not having parallel lawsuits." Hensgens, 833 F.2d at 1182. When balancing the equities of a proposed joinder, courts consider a number of factors, including "the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether

6

plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities." Id. (cited with approval in Casas, 42 F.3d at 675 n.8).

### III. ANALYSIS

Here, Estes argues that these factors weigh in favor of the amendment, and specifically that her purpose is not to destroy diversity, but to join Davis as a defendant for conduct that, while factually related to the state court writ, occurred more than two months after the initial complaint was filed. Estes asserts that, after reading Davis's quote in the Exeter News-Letter, she promptly moved to amend her complaint. The defendants counter that Estes is merely trying to divest the court of jurisdiction, evidenced by the fact that Estes never contemplated bringing a claim against Davis until the case was removed to federal court. While acknowledging that the newspaper article quoting Davis was published well after Estes had filed her state writ of summons, they argue that Estes has nevertheless been dilatory in seeking to join Davis.

The record before the court suggests that Estes is correct; her primary motivation in joining Davis appears to be to seek recovery for her post-removal statements in the Exeter News-Letter, and not to divest the court of jurisdiction. See

Schindler, 2005 WL 1155862, at *2 ("when a plaintiff states a valid claim against a defendant, it is unlikely that the primary purpose of bringing [that defendant] into a litigation is to destroy diversity jurisdiction"). While it is true that Estes's motion to amend was filed after removal, a fact which standing alone potentially cuts in favor of denying joinder, see Rapoport, 198 F.3d at 463 (noting that courts carefully scrutinize attempts to add a non-diverse defendant after removal), Estes was not, and could not have been, aware of Davis's allegedly calumnious statements until February 22, 2008, the date they first appeared in the News-Letter.

Upon learning of Davis's statements, Estes diligently filed her proposed amendment with the court. Indeed, even though Estes waited nearly four months after the original writ was filed in state court, she asked the court to add Davis only two weeks after the statements were published in the Exeter News-Letter. Compare Hensgens, 833 F.2d at 1182 (dilatory tactics in seeking amendment weigh in favor of allowing joinder) with Sutton v. Hollywood Entm't Corp., 181 F. Supp. 2d 504, 508 (D. Md. 2002) (relevant time period is that which elapses between removal and the proposed amendment, not the filing of the complaint and the amendment).

The court recognizes that Davis's identity and activities are referenced throughout Estes's original state court writ. Until Davis was publicly quoted in the local newspaper, however, her conduct relative to Estes was largely confined to the relatively private sphere of employment at Langdon Place.  That Estes chose not to allege intentional infliction of emotional distress until Davis began criticizing Estes in the public sphere does not undermine her position under a Hensgens-Casas analysis.[5]

Estes's proposed amendment is a legitimate effort to assert a colorable related claim arising after removal.  Applying the third Hensgens factor, she will suffer unnecessary harm if she is forced to pursue that claim in a parallel state proceeding while her claim against Sunbridge is litigated in this court.  This approach would force her--as well as the federal and state court--to duplicate their efforts by litigating several of the same issues twice.  Compared to the minimal harm that will come to Sunbridge by having to defend itself in state, rather than federal, court, avoiding that harm to Estes cuts in favor of allowing the amendment.  Kelley, 407 F. Supp. 2d at 308-309.

---

[5] The court expresses no view on whether Davis's alleged treatment of Estes, apart from the statements in the News-Letter, could have given rise to a colorable claim for intentional infliction of emotional distress.

**IV.    CONCLUSION**

After considering the equitable factors relating to the proposed joinder, Estes's motion to join Davis as a defendant is allowed.  Therefore, following the joinder of a non-diverse party to a case based on complete diversity, the court is compelled to allow Estes's motion to remand the action to state court.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Date:   June 13, 2008

cc:   Benjamin T. King, Esq.
      Charles G. Douglas, III, Esq.
      Debra Weiss Ford, Esq.